Joseph LEONE, Jr., Appellant,

v.

The AETNA CASUALTY & SURETY COMPANY, Appellee.

No. 78–1905.

United States Court of Appeals, Third Circuit.

Argued March 22, 1979.

Decided June 8, 1979.

As Amended June 25, 1979.

David A. Koss, Philadelphia, Pa., and F. Emmett Fitzpatrick (argued), Philadelphia, Pa., for appellant.

Cozen, Begier & O'Connor, Robert R. Reeder (argued), Philadelphia, Pa., for appellee.

Before GIBBONS and HUNTER, Circuit Judges, and MEANOR,* District Judge.

## OPINION OF THE COURT

MEANOR, District Judge.

This is an appeal from a judgment which granted defendant Aetna's motion to dismiss the complaint upon the ground that it was barred by the twelve month suit limitation clause contained in the Pennsylvania statutory fire insurance policy. 40 P.S.

---

\* H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation.

1. A Rule 12(b)(6) motion may be advanced on the ground that the complaint on its face shows that the claim is barred by the applicable stat-

§ 636(2). *Leone v. Aetna Life & Cas. Co.,* 448 F.Supp. 698 (E.D.Pa.1978).

Plaintiff's verified complaint was filed in the Philadelphia Court of Common Pleas on November 16, 1977. Following removal to the district court, Aetna, without filing an answer, moved to dismiss for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6), Fed.R. Civ.P.

The complaint seeks recovery on a fire policy. It alleges that on April 30, 1976, Aetna issued to plaintiff's assignor a two month binder of insurance with fire coverage in the amount of $150,000. On May 15, 1976, fire damage was incurred in the amount of $128,043.14. Aetna was duly notified and on June 22, 1976 proofs of loss were filed. Aetna investigated the loss, and, on November 30, 1976, in writing, notified plaintiff "that there is no claim which is compensable under the terms and conditions of the policy of insurance which you have made claim under."

It is essential to emphasize at the outset that we are dealing with a judgment entered on the face of the complaint without affidavits and without discovery. It is the settled rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).[1] The question to be answered thus becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis for avoiding the statutory bar.

The complaint, in paragraph twelve thereof, states the following:

ute of limitations. This in no way ameliorates the duty of the court to read the complaint with the required liberality. *See Hanna v. United States Veterans Admin. Hosp.,* 514 F.2d 1092 (3d Cir. 1975).

On or about October 12, 1976, Defendant, by its duly authorized agent, did advise Plaintiff and Plaintiff's agent that Defendant was continuing to investigate the cause of said loss, because Defendant had reason to believe that the loss incurred was caused by the wilfull (sic) act of Plaintiff, which allegation Plaintiff then and there denied, but which Defendant continued thereafter to allege, despite continued denial by Plaintiff.

The primary reliance of the district court was upon *Lardas v. Underwriters Insurance Co.,* 426 Pa. 47, 231 A.2d 740 (1967). *Lardas,* standing alone, does support the result below. However, we find that *Diamon v. Penn Mutual Fire Insurance Co.,* 247 Pa.Super. 534, 372 A.2d 1218 (1977), when read in light of paragraph 12 of the complaint, requires reversal.

In *Diamon,* the court reversed a grant of summary judgment in favor of an insuror which had been based upon the twelve month suit limitation clause of the Pennsylvania standard fire insurance policy. 40 P.S. § 636(2). *Diamon* involved two bases upon which the insured there was given an opportunity to avoid the impact of the limitation clause. We find that one of those theories is applicable to this complaint as we read it.

In *Diamon,* the insured was prosecuted at the insuror's instance for filing a false proof of loss. The precise contention was that the insured had removed furniture from his home before the fire, but had claimed destruction of the furniture as a loss thereafter. Following conviction, the insured dug up burned remnants of the furniture and was granted a new trial. The district attorney was then given leave to enter a *nolle prosequi.* The insured waited until the end of the five year criminal statute of limitations and then brought suit on his fire policy.

The Superior Court held that the insuror's mistaken charge of criminal liability tolled or suspended the twelve month suit limitation clause. The court was unable to say on the record before it whether events had transpired that would again start the

running of the limitation period. That issue was left for exploration upon remand.

■ The question arises whether, under *Diamon,* an insuror's good faith but erroneous charge of criminal conduct will suffice to toll the limitation period when there is no initiation of a criminal proceeding. On this issue we come to the conclusion that a good faith charge of criminal conduct will not toll the limitation period unless a criminal action is begun. We base this upon the *Diamon* Court's handling of *Abolin v. Farmers American Mutual Fire Insurance Co.,* 100 Pa.Super. 433 (1930). The following statement appears in that case as it is quoted in the *Diamon* opinion:

> The most that the [insured] could show was that five or six months after the fire, and months before the limitation in the policy became effective, when the [insured] asked whether the company was going to pay his claim he was told by the managers that they had not decided whether they would pay him or arrest him, apparently for being concerned in the burning of the insured property. There was certainly nothing in this statement that was by way of inducement to withhold bringing suit, or that evidence any intention on the part of the company to waive this provision of the contract.

*Diamon, supra,* 247 Pa.Super. at 542, 372 A.2d at 1222, *quoting Abolin, supra,* 100 Pa.Super. at 436.

Following the above quotation from *Abolin,* the *Diamon* Court states:

> It is apparent from this statement that if the company had told the insured that it had decided to have him arrested, and if in fact (as here) he had been arrested, there would have been such an "inducement to withhold bringing suit" as would have suspended the limitation clause.

*Diamon, supra,* 247 Pa.Super. at 542, 543, 372 A.2d at 1222.

Thus far we have reviewed only the facts and legal discussion contained in Parts I and II A and B of the *Diamon* opinion. The matter of the good faith of the insuror's accusation is not touched upon in those sec-

tions of the opinion. In light of the *Diamon* Court's treatment of *Abolin,* we believe that it is the law of Pennsylvania that a mere accusation of criminal conduct by an insuror against its insured, made in good faith, and with no steps taken by the insuror toward criminal prosecution, does not effect a tolling or suspension of the suit limitation clause. Since we have nothing before us to indicate that Aetna went beyond stating that plaintiff caused the loss by his willful act, the portions of the *Diamon* opinion we have discussed are of no avail to him.[2]

■ Part III of the *Diamon* opinion, however, affords a potential basis upon which plaintiff may avoid Aetna's assertion of the suit limitation clause. In this part of the opinion the Court, citing among other cases, *Bowers v. Camden Fire Insurance Association,* 51 N.J. 62, 71, 237 A.2d 857, 861 (1968) and *Gedeon v. State Farm Mutual Automobile Insurance Co.,* 410 Pa. 55, 59, 188 A.2d 320, 322 (1963), stresses the duty of utmost good faith and fair dealing which an insuror owes its insured. Placing reliance upon *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), the *Diamon* Court adopted a rule that an insuror's bad faith accusation of criminal conduct on the part of an insured, or such an allegation engendered by a negligently conducted investigation, would toll the suit limitation clause. We believe that the contentions of paragraph 12 of the plaintiff's complaint, given the required liberal reading, would be sufficient at a trial to place in issue the good faith of Aetna's assertion of criminal conduct as well as the question whether that accusation, if false, resulted from an improperly conducted investigation. It is to explore this issue that we reverse and remand. We stress again that we deal here only with a pleading. We do not imply that a question of fact exists on the question whether conduct of Aetna has tolled the suit limitation clause. We only hold that the plaintiff must be given an opportunity to attempt to establish a fact question on this issue.[3] By the same token, we express no opinion that some event exists that began the period anew if it was at any time tolled. This may be an issue to be dealt with upon remand.[4]

---

2. The *Diamon* Court also cites *Simons v. Safety Mut. Fire Ins. Co.,* 277 Pa. 200, 120 A. 822 (1923) and *Fedas v. Insurance Co. of the State of Pennsylvania,* 300 Pa. 555, 151 A. 285 (1930). In both cases the insuror defended upon the ground that there had not been a timely filing of proofs of loss. In both cases the claim had been denied before proofs of loss were filed on the ground of the insured's criminal, fraudulent or dishonest conduct. In both cases it was held that the insuror had waived its right to insist on timely filing. We do not view the waiver thesis of these cases as hinging upon the fact that dishonest or criminal conduct was the basis of the denial of liability upon the policy. Rather, they seem to us to be exemplary of the rule that an insuror may not deny liability upon one ground and later defend a suit upon another. Having denied liability without citing failure to timely file proofs of loss, each defendant in these cases was precluded by waiver from relying upon that defense at trial.

3. The Pennsylvania Superior Court recently has noted the essentially factual nature of waiver and estoppel arguments when used as a basis for tolling a suit limitation clause. *Brooks v. St. Paul Ins. Co.,* Pa.Super., 399 A.2d 714 (1979).

4. It is contended here that under the interpretation given it in *Diamon, Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193 (1977) requires Aetna to establish prejudice to it in order to take advantage of the suit limitation clause. In *Brakeman,* the Court was dealing with a notice of accident clause in an automobile liability policy. Abandoning past precedent, it was held that before an insuror could deny its policy obligations on the basis of a breach of such a clause, it must first establish prejudice to it by reason of the breach. We are not as sure as was Judge Huyett in *ACF Produce, Inc. v. Chubb/Pacific Indem. Group,* 451 F.Supp. 1095 (E.D.Pa.1978) that *Diamon* meant to apply *Brakeman* to a statutorily required suit limitation clause as well as to the type of contractual clause at issue there. *Diamon's* use of *Brakeman* can be read as applying it only to the issue of when and under what circumstances the tolling ceases and the suit limitation period begins to run again. In making this determination, the *Diamon* Court seems to be saying that lack of prejudice to the insuror may be a relevant factor. In any event, whether an insuror must show prejudice before obtaining exoneration of liability because of violation of the suit limitation clause is not an issue concretely before us; it may be unnecessary to resolve in this case and we deem it of

The judgment of the district court will be reversed and the matter will be remanded for further proceedings not inconsistent with this opinion.

JAMES HUNTER, III, Circuit Judge, dissenting:

I do not believe that the *Diamon* case, which is the sole basis for the majority's decision to reverse the judgment of the district court, accurately represents Pennsylvania law. Moreover, even if *Diamon* were a correct statement of Pennsylvania law, appellant's complaint does not make sufficient allegations to come within the *Diamon* rule. Accordingly, I dissent.

I

This Court is, of course, not obligated in a diversity case to adopt the most recent decision of a lower state court as the law of the state, irrespective of whether that decision is consistent with earlier rulings of the state supreme court. Instead, as we noted in *National Surety Corp. v. Midland Bank*, 551 F.2d 21 (3d Cir. 1977), our task is to "determine how the [state] Supreme Court would decide the question before us." *Id.* at 28; *see Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

At issue in this case is the effect to be given a statutorily mandated [1] provision in Leone's fire insurance policy, which states that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, *and unless commenced within twelve months next after inception of the loss.*" (emphasis added).

This suit limitation clause has been examined by the Pennsylvania Supreme Court in *Lardas v. Underwriters Insurance Co.*, 426 Pa. 47, 231 A.2d 740 (1967), and *General*

State Authority v. Planet Insurance Co., 464 Pa. 162, 346 A.2d 265 (1975). In *Lardas* the supreme court concluded that such a clause is "valid and reasonable," 426 Pa. at 50, 231 A.2d at 741, and held that "[t]he failure of [the insured] to abide by the [suit limitation] provision . . . constitutes an absolute bar to [the insured's] claim. To hold otherwise, in the factual matrix of this litigation would render meaningless this provision." *Id.* at 53, 231 A.2d at 742–43. Similarly, in *General State Authority,* the court "recognize[d] the validity and binding nature" of the one year limit, 464 Pa. at 168, 346 A.2d at 268.

Despite the seemingly unequivocal language of these cases, however, the supreme court has recognized that failure to bring a suit to compel payment of fire insurance benefits within one year of loss does not *per se* prevent judicial consideration of the suit. In *Lardas*, the court reached the merits of an insured's claim that the insurer had waived its right to rely on the suit limitation provision, or was estopped from doing so. *See* 426 Pa. at 52–53, 231 A.2d at 742. And in *General State Authority*, the court explicitly held that an insured could excuse his failure to file suit within one year of loss by proving facts constituting waiver or estoppel. 464 Pa. at 165 n. 6, 168, 346 A.2d at 267 n. 6, 268.

It is essential to note, however, that the supreme court read these exceptions to the twelve month limit provision very narrowly. Thus, the insured's claims of waiver and estoppel were denied in *Lardas* because the insurers "did not in any manner mislead [insured] about the possibility of settlement," 426 Pa. at 52, 231 A.2d at 742, nor did they "in any manner induce or persuade [him] to refrain from commencing suit." *Id.* In like manner, the court in *General State Authority* recognized an exception to the one year limit "where the actions of the

sufficient importance to be reserved for resolution at a time when it is necessarily presented. For a case noting the difference between a notice provision and a suit limitation clause, and applying a prejudice rule to the former and not the latter, *see Brandywine One Hundred*

Corp. v. Hartford Fire Ins. Co., 405 F.Supp. 147 (D.Del.1975), *aff'd mem.*, 588 F.2d 819 (3d Cir. 1978). (Delaware law.)

1. Pa.Stat.Ann. tit. 40, § 636(2), lines 157–61 (1971).

insurer lead the insured to believe the contractual limitation period will not be enforced," 464 Pa. at 165 n. 6, 346 A.2d at 267 n. 6, or where "the insured's failure to comply is induced by the actions of the insurer." *Id.*

In short, *Lardas* and *General State Authority* do not stand for the broad principle apparently adopted by the majority that the statutory suit limitation clause may be ignored whenever the insurer fails to act in good faith. Instead, these cases hold only that a court, in order to prevent injustice, need not strictly observe the clause when "conduct or action on the part of the insurer *is responsible for the insured's failure to comply in time.*" *Id.* at 168, 346 A.2d at 268 (emphasis added). This Court's consideration of *Diamon* is circumscribed by these two cases.

As the majority points out, *Diamon* relied on two alternative theories to allow the plaintiff-insured in that case to avoid the impact of the suit limitation provision. The first theory, purportedly based on principles of estoppel,[2] was that the one year time period is tolled when an insurer has an insured arrested for filing an allegedly fraudulent insurance claim. The majority in this case does not rely on that theory, finding it unavailable to Leone given the allegations contained in his complaint.[3]

The second theory advanced in *Diamon* to circumvent the suit limitation clause, and used by the majority here, is in two parts. First, the superior court recognized that under Pennsylvania and common law, an insurer owes a duty of good faith and fair dealing to its insured. Second, relying on a California decision, *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), the court held that if the insurer breached this duty in the course of its investigation of the insured's claim, a subsequent suit by the insured "to recover on the policy is not barred by [the] failure to comply with the [one year suit] limitation clause."[4] 247 Pa.Super. at 555, 372 A.2d at 1229. This theory, in my view, is inconsistent with *Lardas* and *General State Authority*; I believe that the majority errs in adopting it.

The essence of *Lardas* and *General State Authority* is that an insured can excuse his failure to file suit within one year of loss only when "the insurer is responsible for the insured's failure to comply in time." *General State Authority*, 464 Pa. at 168, 346 A.2d at 268. This principle rests on the premise that it would be grossly unfair to allow an insurer to avoid liability under the policy by invoking the suit limitation clause when the failure of the insured to sue on time was the fault of the insurer, not the insured. Otherwise, an insurer could easily

---

**2.** The court in *Diamon* distinguished the concepts of waiver and estoppel. 247 Pa.Super. at 539–40, 372 A.2d at 1220–21. *See O'Connor v. Allemania Fire Ins. Co.*, 128 Pa.Super. 336, 339–40, 194 A. 217, 218–19 (1937). It viewed waiver as an express decision by the insurer not to rely on the suit limitation clause; estoppel, on the other hand, referred to acts by the insurer which excused the insured's failure to comply with the clause, notwithstanding the insurer's intention to invoke the clause as a defense. Nothing in Leone's complaint suggests that Aetna waived its right to rely on the one year limit, and Leone does not allege waiver on appeal.

**3.** Leone does not allege in his complaint that he was actually arrested, but only that Aetna denied his claim on the ground that Leone caused the fire. In *Abolin v. Farmers American Mutual Fire Ins. Co.*, 100 Pa.Super. 433 (1930), the superior court held that a statement by an insurer that it did not know whether to pay the

insured or have him arrested for being involved in the burning of his property did not estop the insurer from invoking the one year suit limitation provision. The majority, while apparently accepting both *Diamon* and *Abolin* as accurate statements of Pennsylvania law, believes that the facts of this case, as alleged by Leone, are closer to *Abolin* than they are to *Diamon*. Because the majority does not rely on the first alternative ground of *Diamon*, I will not discuss it in detail. I will say only that, in my view, the facts of the two cases are indistinguishable, and that the result in *Abolin* is consistent with the rationale of *Lardas* and *General State Authority* while the result in *Diamon* is not.

**4.** The *Diamon* court also implied that an insured's failure to comply with the suit limitation clause would be excused even if the insured's decision to deny his claim was based on a good faith but negligent investigation. 247 Pa.Super. at 555, 372 A.2d at 1229.

avoid having to reimburse its insured merely by promising to pay until it is too late for the insured to file suit, and then reneging.

The equitable underpinning which makes the *Lardas/General State Authority* estoppel rule a necessary exception to the twelve month suit limitation clause is glaringly absent with regard to the *Diamon* "good faith" test. If the insurer, whether or not acting in good faith, denies an insured's claim and there is sufficient time left for the insured to comply with the one year limit, the insured, far from being induced not to sue, will be motivated to file suit promptly.[5] If the insured nevertheless fails to comply with the suit limitation provision, the fault for non-compliance is his, not the insurer's. And when the blame for failure to act in accordance with the suit limitation provision is not attributable to the insurer, I do not understand how, consistent with *Lardas* and *General State Authority*, the insurer can be estopped from relying on that provision.

Thus, under Pennsylvania law as I read it, the one year suit limitation provision is binding unless the insurer is responsible for the insured's failure to comply with it. Here, even if the majority correctly reads into Leone's complaint the allegation that Aetna's denial of his claim was made in bad faith,[6] there is nothing in the complaint to suggest that Aetna in any way was the cause of Leone's failure to bring a timely suit to compel payment of his claim. As a result, I dissent.

## II

Even if the *Diamon* "good faith" test were an accurate statement of Pennsylvania law, I would still be unable to join the majority's opinion. The majority reads an allegation of a *bad faith* denial of Leone's claim into paragraph twelve of Leone's complaint, which provides:

On or about October 12, 1976, Defendant, by its duly authorized agent, did advise Plaintiff and Plaintiff's agent that Defendant was continuing to investigate the cause of said loss, because Defendant had reason to believe that the loss incurred was caused by the wilfull (sic) act of Plaintiff, which allegation Plaintiff then and there denied, but which Defendant continued thereafter to allege, despite continued denial by Plaintiff.

I agree with the majority that the *Conley* test governs our examination of the complaint, and that we must give the complaint a "liberal reading." But *Conley* does not stand for the principle that a federal court must deny a rule 12(b)(6) motion to dismiss whenever it can imagine a set of allegations—plainly not contained in the complaint—which would entitle the plaintiff to relief if proved at trial. Instead, the rule is that "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . , or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 122–23; *see id.* § 1357, at 602.

On its face, paragraph twelve stated only that Aetna denied Leone's claim on the ground that the loss resulted from Leone's willful act. Necessarily implicit in this allegation is that Leone did not in fact cause the fire, and that Aetna was therefore wrong in refusing to make payment. But I do not believe that the language of the paragraph is subject to the inference not only that Leone was blameless, but that Aetna knew he was not responsible, or conducted an investigation of the fire that was so reckless as to put its good faith at issue. Thus, even if the *Diamon* good faith test is the law of Pennsylvania, which I doubt, I cannot read Leone's complaint as making

---

5. In *Lardas*, the supreme court held that estoppel was not demonstrated when the plaintiff had five months to file a timely suit after he and the insurer terminated negotiations for a settlement. 426 Pa. at 51, 231 A.2d at 742. Here, the fire occurred on May 15, 1976, and

Leone's complaint was denied on November 30, 1976. Thus, Leone had more than five months to file his suit after the rejection of his claim.

6. *But see* part II infra.

allegations sufficient to come within the *Diamon* rule.[7]

---

7. On appeal, Leone contends that *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193 (1977), requires reversal. In *Brakeman*, the supreme court held that a suit to collect on an automobile liability policy may not be dismissed for failure to comply with the notice of loss provision of the policy absent a showing of prejudice to the insurer. Leone claims that the prejudice test also applies here, so that his complaint may not be summarily dismissed. For the reasons so well expressed by the district court in *Brandywine One Hundred Corp. v. Hartford Fire Ins. Co.*, 405 F.Supp. 147 (D.Del.1975), aff'd 588 F.2d 819 (3d Cir. 1978), I do not believe that the Pennsylvania Supreme Court would apply *Brakeman* in the context of a suit limitation clause, the purpose of which is totally distinct from that of a notice of loss provision.